UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ADEL ALMAZNAI, et al.,

        Plaintiffs,

v.

S-L DISTRIBUTION COMPANY, LLC, et al.,

        Defendants.

Case No. 20-cv-08487-JST

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS; DENYING MOTION TO COMPEL ARBITRATION**

Re: ECF Nos. 14, 16, 29

      Before the Court is Defendants' motion to dismiss and Defendants' motion to compel arbitration. The Court will grant the motion to dismiss in part and deny it in part, and will deny the motion to compel arbitration.

## I.     BACKGROUND[1]

      Defendants[2] S-L Distribution Company, LLC, ("S-L") and Snyder's-Lance, Inc., operate as a snack food wholesale distributor authorized to sell and distribute snack products, including

---

[1] For the purpose of resolving the present motion to dismiss, the Court accepts as true the allegations in the first amended complaint ("FAC"), ECF No. 10.

[2] Pursuant to a stipulation and order, ECF No. 34, Plaintiffs filed a second amended complaint ("SAC") after the present motion to dismiss and motion to compel arbitration had been fully briefed. *See* ECF No. 35. In the SAC, Plaintiffs added Snyder's-Lance, Inc., as a named Defendant in light of the merger between Defendant S-L Distribution Company, LLC, and Snyder's-Lance, Inc. *See id.* The parties represent that S-L Distribution Company ceased to be a separate legal entity as a result of the merger, and that Snyder's-Lance has assumed S-L Distribution Company's rights and liabilities. *Id.* Accordingly, the filing of the SAC does "not impact the determination" of the present motions even though the motions refer only to the allegations in the FAC. *Id.* To avoid confusion, the Court will use the term "Defendants" in this order to refer to S-L Distribution Company, LLC, and Snyder's-Lance, Inc., because both of these entities are, as of the date of this order, named defendants in this action pursuant to the SAC.

the Snyder's of Hanover and Lance brands of products. ECF No. 10 ¶ 10. S-L relies on drivers to deliver and stock products at retail grocery store outlets.

Plaintiffs[3] Adel Almaznai, Marino Cruz, Hector Hernandez, Francisco Jabier Rojas, and Andrew Coelho[4] ("Plaintiffs") allege that they served as drivers for Defendants and carried out Defendants' distribution work—that is, ordering, delivering, stocking, and merchandising Defendants' products. *Id.* ¶¶ 15-22. Plaintiffs aver that Defendants misclassified them as "independent contractors" because Defendants have retained and exercised pervasive control over their distribution operations, including pursuant to a "distributor agreement" between Plaintiffs and Defendants that requires Plaintiffs to meet and comply with the needs, policies, procedures, requests, and requirements of Defendants' customers. *Id.* ¶¶ 3, 10-14.

Plaintiffs assert the following claims against Defendants: (1) failure to reimburse business expenses in violation of California Labor Code § 2802; (2) unlawful deductions from wages in violation of California Labor Code §§ 221, 223, 400-410; (3) failure to provide off-duty meal periods in violation of California Labor Code §§ 226.7 and 512; (4) failure to pay for rest breaks in violation of California Labor Code §§ 226.7, 1194, and 1194.2; (5) failure to furnish accurate wage statements in violation of California Labor Code §§ 226 and 226.3; (6) failure to pay overtime compensation in violation of California Labor Code §§ 510 and 1194; (7) failure to pay overtime compensation in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207 and 216; (8) failure to pay minimum wage in violation of California Labor Code §§ 1182.1, 1182.12, 1194, and 1197; (9) failure to pay federal minimum wage in violation of the FLSA, 29 U.S.C. §§ 206 and 216; and (10) violations of the Unfair Competition Law ("UCL"), California Business and Professions Code §§ 17200-09.

II.     **REQUESTS FOR JUDICIAL NOTICE**

The Court may take judicial notice of a fact "that is not subject to reasonable dispute

---

[3] In the SAC, Plaintiffs asserted claims on behalf of two additional named plaintiffs, namely Marco A. Lara Sotelo and Timothy Vigil. The claims of Sotelo and Vigil are not at issue in the present motions.

[4] The claims of Plaintiff Coelho are not at issue in either of the present motions.

1    because it . . . can be accurately and readily determined from sources whose accuracy cannot

2    reasonably be questioned." Fed. R. Evid. 201(b)(2).

3          Defendants request judicial notice of various court filings in an action pending in the

4    Western District of North Carolina captioned *Mode v. S-L Distribution Co., LLC*, Case No. 18-cv-

5    00150 ("*Mode* litigation"). ECF Nos. 15, 27. Defendants also request judicial notice of various

6    court filings in another action in this district captioned *Aledlah v. S-L Distribution Company, LLC*,

7    4:20-cv-00234-JSC. ECF No. 17. Plaintiffs do not oppose these requests.

8          Because the court filings at issue can be accurately and readily determined from sources

9    whose accuracy cannot reasonably be questioned, and because no party disputes their authenticity,

10    the Court GRANTS Defendants' requests for judicial notice.

**III.     JURISDICTION**

12          The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

**IV.     MOTION TO DISMISS**

**A.     Legal Standard**

15          A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal

16    sufficiency of the claims in the complaint. "To survive a motion to dismiss, a complaint must

17    contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

18    face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court

19    to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*

20    *v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). "Threadbare

21    recitals of the elements of a cause of action, supported by mere conclusory statements, do not

22    suffice." *Id.* When dismissing a complaint, the court must grant leave to amend unless it is clear

23    that the complaint's deficiencies cannot be cured by amendment. *Lucas v. Dep't of Corrections*,

24    66 F.3d 245, 248 (9th Cir. 1995).

**B.     Discussion**

**1.     Claims of Plaintiff Marino Cruz**

27          Defendants move to dismiss with prejudice the claims asserted by Plaintiff Cruz on the

28    grounds that (1) the claims are barred by a release contained in the Agreement of Sale executed by

1    Cruz on July 23, 2017, which terminated his distributor relationship with S-L; and (2) Cruz's

2    claims are time-barred.

3                    a.        **Release of Claims in the Agreement of Sale**

4         Defendants move to dismiss Cruz's claims with prejudice on the ground that Cruz entered

5    into an Agreement of Sale in July 2017, pursuant to which he sold back to Defendants the territory

6    he acquired under a distributor agreement.  Defendants contend that this Agreement of Sale bars

7    Cruz's claims because it contains "a full and general release of all claims that [Cruz] may have or

8    had, known and unknown, against S-L" arising out of any conduct occurring during his ownership

9    of the territory from March 2009 to July 2017.  ECF No. 14 at 9.  Defendants argue that the Court

10   may consider the Agreement of Sale when deciding the present motion to dismiss because it is

11   incorporated by reference in the distributor agreement alleged in the FAC.

12        Plaintiffs argue that the Court cannot consider the Agreement of Sale under the

13   incorporation-by-reference doctrine when resolving the present motion to dismiss, because that

14   contract is neither attached to, nor referenced in, the FAC, and because it is not integral to Cruz's

15   claims.  Plaintiffs further contend that, even if the Court could consider the Agreement of Sale

16   under the incorporation-by-reference doctrine, the contract does not require the dismissal with

17   prejudice of Cruz's claims because (1) the FAC contains allegations that his work for Defendants

18   post-dates the Agreement; and (2) the release in the Agreement is ambiguous and does not cover

19   the claims that Cruz asserts in this action.

20        The Court first examines whether it may consider the Agreement of Sale under the

21   incorporation-by-reference doctrine.  Because that issue is dispositive, the Court does not consider

22   the scope of the release.

23        "Generally, district courts may not consider material outside the pleadings when assessing

24   the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure."

25   *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) ("*Khoja*").  "There are

26   two exceptions to this rule: the incorporation-by-reference doctrine, and judicial notice under

27   Federal Rule of Evidence 201."  *Id.*  As relevant here, "incorporation-by-reference is a judicially

28   created doctrine that treats certain documents as though they are part of the complaint itself.  The

4

doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Id.* at 1002 (citations omitted).  A court may consider an extrinsic document even where it is not mentioned in the complaint, but only where the plaintiff's claims "necessarily depend[]" on it.  *Id.* (citation omitted).  For example, a court may consider under the incorporation-by-reference doctrine an employee healthcare plan where the plaintiff's claims are premised upon the plaintiff's coverage under the plan.  *See id.* (citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *as amended* (July 28, 1998)).

"However, if the document [to be incorporated] merely creates a defense to the well-pled allegations in the complaint, then [the court may not incorporate it because] that document did not necessarily form the basis of the complaint.  Otherwise, defendants could use the doctrine to insert their own version of events into the complaint to defeat otherwise cognizable claims." *Id.* (citations omitted).  The Ninth Circuit has cautioned that:

> Submitting documents not mentioned in the complaint to create a defense is nothing more than another way of disputing the factual allegations in the complaint, but with a perverse added benefit: unless the district court converts the defendant's motion to dismiss into a motion for summary judgment, the plaintiff receives no opportunity to respond to the defendant's new version of the facts. Without that opportunity to respond, the defendant's newly-expanded version of the complaint—accepted as true at the pleading stage—can easily topple otherwise cognizable claims. Although the incorporation-by-reference doctrine is designed to prevent artful pleading by plaintiffs, the doctrine is not a tool for defendants to short-circuit the resolution of a well-pleaded claim.

*Id.* at 1003.

Here, Defendants contend that the Court can and should consider the Agreement of Sale under the incorporation-by-reference doctrine because (1) the FAC contains allegations that refer to a distributor agreement between Plaintiffs and Defendants which, in turn, "incorporates the Agreement of Sale"; and (2) the distributor agreement and the Agreement of Sale together "governed the terms of Plaintiff's business relationship with S-L, and its termination, and allegedly give rise to wage and hour claims asserted in the FAC."  ECF No. 14 at 11-12.

Defendants' arguments are unpersuasive.  First, the Agreement of Sale is not mentioned in

the FAC. Accordingly, under *Khoja*, the Court may consider the Agreement of Sale under the incorporation-by-reference doctrine *only if* Cruz's claims necessarily depend on it. *Khoja*, 899 F.3d at 1002. Cruz's claims do not necessarily depend on the Agreement of Sale, however. His claims arise out of the FLSA and various California statutes, and Cruz would be able to assert them regardless of the existence or execution of the Agreement of Sale. The Agreement of Sale "merely creates a defense" to Cruz's allegations that he has continued to work as a driver for Defendants even after the Agreement of Sale's execution in July 2017, and that Defendants improperly misclassified him as an independent contractor throughout his alleged tenure with Defendants. *See* ECF No. 10 ¶¶ 1-5, 17 (alleging that Cruz has worked for Defendants continuously since 2004 and that Defendants misclassified him as an independent contractor). As such, the Agreement of Sale falls outside of the scope of the incorporation-by-reference doctrine and the Court may not consider it. *See Khoja*, 899 F.3d at 1003.

In their motion to dismiss, Defendants rely on non-controlling authorities to support the argument that the Court can consider the Agreement of Sale on the basis that it is "integral" to Cruz's claims. *See* ECF No. 14 at 12-13. These authorities, however, pre-date *Khoja* and have, therefore, been overruled by it. Notably, Defendants have not addressed, much less distinguished, *Khoja*.

In sum, because Defendants' motion to dismiss Cruz's claims is predicated on the release contained in the Agreement of Sale, and because the Court may not consider the Agreement of Sale under the incorporation-by-reference doctrine, the Court denies Defendants' motion to dismiss Cruz's claims based on the Agreement of Sale.

### b.      Statute of Limitations

Defendants next move to dismiss Cruz's claims on the ground that his FLSA claims are time-barred. Defendants argue that Cruz's claims "would have necessarily accrued on or before July 23, 2017," the date when Cruz purportedly terminated his "business relationship" with Defendants pursuant to the Agreement of Sale discussed above. ECF No. 14 at 13-14. Defendants further argue that because Cruz filed his claims more than three years after that date, his claims are untimely because the statute of limitations for FLSA claims is, at most, three years.

Plaintiffs respond that Cruz's claims are not time-barred because the FAC contains allegations that Cruz has worked continuously for Defendants as a driver since 2004, and based on such allegations, his claims have continued to accrue continuously since 2004 notwithstanding the Agreement of Sale executed in July 2017.

The Court agrees with Plaintiffs. Here, Plaintiffs allege that Cruz "has served as a driver for S-L since approximately 2004," ECF No. 10 ¶ 5, and that Cruz was an employee of Defendants notwithstanding their classification of him as an independent contractor, *id.* ¶ 3. These allegations are sufficient to raise the reasonable inference that Cruz has performed work that gives rise to claims under the FLSA and California law from 2004 to the present, and that his claims under these statutes have continuously accrued during that time period. Defendants' statute-of-limitations argument is predicated entirely on the July 2017 date of execution of the Agreement of Sale and on the notion that all of Cruz's claims accrued prior to that date. For the reasons discussed in more detail above, however, the Court cannot consider that contract or the date of its execution for the purpose of resolving the present motion to dismiss. Additionally, the Court must construe Plaintiffs' allegations that Cruz has been an employee of Defendants from 2004 to the present in the light most favorable to them at this stage of the litigation.

Accordingly, the Court denies Defendants' motion to dismiss Cruz's claims.

### 2. Claims of Plaintiff Francisco Jabier Rojas

Defendants move to dismiss the claims asserted by Plaintiff Rojas based on the claim-splitting doctrine or, alternatively, under the first-to-file rule. Defendants contend, and Plaintiffs do not dispute, that as of May 2019, Rojas is an opt-in plaintiff in the *Mode* litigation, which is an earlier-filed nationwide FLSA collective action against Defendants pending in the Western District of North Carolina. It is undisputed that the *Mode* litigation is predicated on allegations that Defendants misclassified employees as independent contractors and failed to pay them minimum and overtime wages in violation of the FLSA. The only claims at issue in the *Mode* litigation are under the FLSA; no state-law claims are asserted there. Defendants argue that Rojas' claims in this action are duplicative of those he has asserted or could have asserted in the *Mode* litigation and, as such, the Court should dismiss them without prejudice.

### a. Claim-Splitting Doctrine

"Plaintiffs generally have 'no right to maintain two separate actions involving the same subject matter at the same time in the same court[5] and against the same defendant.'" *Adams v. California Dep't of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007) (quoting *Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977) (en banc)). "The rule preventing claim splitting is designed to 'protect the defendant from being harassed by repetitive actions based on the same claim.'" *Adobe Sys. Inc. v. Wowza Media Sys., LLC*, 72 F. Supp. 3d 989, 993-94 (N.D. Cal. 2014) (Tigar, J.) (quoting *Clements v. Airport Authority of Washoe Cnty.*, 69 F.3d 321 (9th Cir. 1995)). The prohibition against claim splitting is a "sub-species of the doctrine of claim preclusion." *Id.*; *see also Adams*, 487 F.3d at 688-89 (holding that, in determining whether a subsequent suit is duplicative of a prior suit under the claim-splitting doctrine, courts "borrow from the test for claim preclusion"). Claim preclusion bars a second action where "(1) the same parties, or their privies, were involved in the prior litigation, (2) the prior litigation involved the same claim or cause of action as the later suit, and (3) the prior litigation was terminated by a final judgment on the merits." *Cent. Delta Water Agency v. United States*, 306 F.3d 938, 952 (9th Cir. 2002). "After weighing the equities of the case, the district court may exercise its discretion to dismiss a duplicative later-filed action, to stay that action pending resolution of the previously filed action, to enjoin the parties from proceeding with it, or to consolidate both actions." *Adams*, 487 F.3d at 688.

Here, the first claim-splitting doctrine requirement is met, because Rojas and Defendants are parties in both actions. Rojas is a named plaintiff in this action, and he is a party-plaintiff in

---

[5] Two actions are in the "same court" within the meaning of the claim-splitting doctrine when both were filed in federal court. The claim-splitting doctrine does not apply where one of the actions was filed in state court and the other in federal court; in that circumstance, however, other doctrines, such as the doctrine of abstention, may require the dismissal of the federal action if it is identical to the pending state court action. *See Sanzaro v. Ardiente Homeowners Ass'n LLC*, 513 F. App'x 646, 647 (9th Cir. 2013) (unpublished) (holding that dismissal under the claim-splitting doctrine of a federal action "as duplicative of a state court action was improper because the other action is not in the same court"); *Noel v. Hall*, 341 F.3d 1148, 1159 (9th Cir. 2003) ("[O]verlapping or even identical federal and state court litigation may proceed simultaneously, limited only by doctrines of abstention and comity[.]").

the *Mode* litigation by virtue of having filed a consent to opt in.  Plaintiffs argue that Rojas'

consent to opt into the *Mode* litigation does not mean that he is a party in that action, or that his

interests under the California Labor Code are adequately represented there.  This argument is

unpersuasive in light of *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1104 (9th Cir. 2018),

which holds that "[t]he FLSA leaves no doubt that 'every plaintiff who opts in to a collective

action has party status'" as of "the date her opt-in form is filed with the district court."  *Id.*

(citations omitted).  After a person opts into a FLSA collective action, "there is no statutory

distinction between the roles or nomenclature assigned to the original and opt-in plaintiffs."  *Id.*

(citation omitted).  "And the result of joining the collective is 'the same status in relation to the

claims of the lawsuit as [that held by] the [original] named plaintiffs.'"  *Id.* at 1105 (citation

omitted).  *Campbell* further holds that a FLSA collective action is not a "representative action" in

the same sense as a Rule 23 class action because, in a FLSA collective action, "aggrieved workers

act as a collective of *individual* plaintiffs with *individual* cases—capitalizing on efficiencies of

scale, but without necessarily permitting a specific, named representative to control the litigation,

except as the workers may separately so agree."  *Id.* at 1105 (citation omitted) (emphasis in the

original).  Accordingly, under *Campbell*, Rojas is a party in the *Mode* litigation and he represents

his own interests in that case for the purpose of the claim-splitting doctrine analysis.[6]  Plaintiffs

have not addressed or distinguished *Campbell*.[7]

---

[6] The notion that the Court must examine whether Rojas' interests were adequately represented by the named plaintiff in the *Mode* litigation is inconsistent with *Campbell*.  Adequacy of representation comes into play where, unlike here, one of the two actions is a class action under Rule 23; in that circumstance, a court may consider the extent to which the interests of an *unnamed plaintiff* who lacks party status in the Rule 23 class action were adequately represented by the named plaintiff when determining whether his claims in a subsequent action are barred under the doctrine of claim preclusion.  *See, e.g.*, *Bojorquez v. Abercrombie & Fitch, Co.*, 193 F. Supp. 3d 1117, 1124 (C.D. Cal. 2016) (holding that nonparties may be bound by judgments in a prior Rule 23 class action if the nonparty's interests were adequately represented in that prior class action, where adequate representation is determined based on the procedural safeguards of Rule 23).

[7] Plaintiffs rely on *Beckerley v. Alorica, Inc.*, No. SACV 14-0836-DOC, 2014 WL 4670229, at *5 (C.D. Cal. Sept. 17, 2014) to argue that the application of the claim-splitting doctrine in this case requires analyzing "whether Rojas's interests are 'adequately represented' by a party in *Mode*." ECF No. 25 at 14.  In *Beckerley*, the plaintiffs in a later-filed action asserted FLSA claims even though most of the plaintiffs had opted into an earlier-filed FLSA collective action arising from the same operative facts.  The court, relying on authorities relevant only to class actions under

The second claim-splitting doctrine requirement looks to whether the prior action involved the same claim or cause of action as the second suit. To determine whether both actions involved the same claim or cause of action, courts employ "the transaction test[] developed in the context of claim preclusion." *Adams*, 487 F.3d at 689. "Whether two events are part of the same transaction or series depends on whether they are related to the same set of facts and whether they could conveniently be tried together." *Western Sys., Inc. v. Ulloa*, 958 F.2d 864, 871 (9th Cir. 1992) (citation omitted). In applying the transaction test, courts examine four criteria:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201-02 (9th Cir. 1982). "The last of these criteria is the most important." *Id.* at 1202.

Plaintiffs concede that Rojas' FLSA claims in this action and his FLSA claims in the *Mode* litigation are the same cause of action. *See* ECF No. 25 at 13 ("The duplication of litigation is limited to Plaintiff's FLSA minimum wage and overtime claims averred here and that remain at issue in *Mode* where Rojas is an unnamed, opt-in plaintiff in a nationwide FLSA-only case."). Accordingly, the Court finds that the second element of the claim-splitting analysis is met with respect to his FLSA claims. The Court, therefore, grants Defendants' motion to dismiss Rojas' FLSA claims without prejudice.

The remainder of Rojas' claims arise out of California statutes and are based on allegations that, while Rojas was a driver for Defendants, Defendants failed to pay him minimum and overtime wages, failed to reimburse his business expenses, unlawfully deducted amounts from his

Rule 23, held that "whether the rule against claim splitting should be applied to dismiss later-filed claims by individuals who are unnamed members of a class or collective action in a prior-filed case depends on whether the named plaintiffs in the prior-filed case adequately represent(ed) the plaintiffs in the later-filed case on the later-filing plaintiffs' claims." *Id.* at *5. This Court declines to adopt the *Beckerley* court's reasoning because it improperly relies on Rule 23 standards for adequacy of representation despite *Campbell*'s holding that Rule 23 is inapposite in the context of FLSA collective actions.

wages, failed to provide him with off-duty meal periods, failed to pay him for rest breaks, and failed to provide him with accurate wage statements. The Court finds that these claims also satisfy the second requirement of the claim-splitting analysis based on the transaction test.

As noted, the most important and outcome-determinative factor of the transaction test considers whether the two suits arise out of the same transactional nucleus of operative fact. *See Mpoyo v. Litton Electro-Optical Sys.,* 430 F.3d 985, 988 (9th Cir. 2005) (holding that the existence of a common transactional nucleus of operative fact is "outcome determinative" when considering whether claim preclusion bars a second action). A common transactional nucleus of operative fact exists where "both complaints relate to the same set of facts and form a convenient trial unit." *Adams*, 487 F.3d at 690. That standard is satisfied where, as here, the claims in both actions are premised on conduct arising from an alleged employee-employer relationship. *See Mpoyo*, 430 F.3d at 987 (holding that FLSA claims based on an alleged failure to pay overtime compensation were barred under the doctrine of claim preclusion in relevant part because such claims "share a common nucleus of operative fact" with claims for employment discrimination and retaliation under Title VII asserted in a prior action, because the claims in both actions arose from conduct while the plaintiff "was an employee" of the defendant and the claims "form[ed] a convenient trial unit that discloses a cohesive narrative of an employee-employer relationship"). Because the most important and outcome-determinative factor of the transaction test is met here, the Court "need not . . . consider the other criteria" of the transaction test to conclude that both actions involve the same cause of action. *See Media Rts. Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1031 n.14 (9th Cir. 2019).

The third claim-splitting doctrine requirement, which looks to whether the first action was finally decided on the merits, also is met, because the analysis requires only the *assumption* that the first suit was finally decided. *See Adams,* 487 F.3d at 688-89 ("[T]he appropriate inquiry is whether, assuming that the first suit were already final, the second suit could be precluded pursuant to claim preclusion.").

In sum, the Court finds that all of the requirements of the claim-splitting analysis are satisfied here with respect to all of Rojas' claims.

11

Relying on *Bechtel Petroleum, Inc. v. Webster*, 636 F. Supp. 486, 499 (N.D. Cal. 1984), *aff'd*, 796 F.2d 252 (9th Cir. 1986), Plaintiffs argue that, even if the claim-splitting doctrine applies here, Rojas' claims fall within an exception to that doctrine because "the statutory scheme contemplates permitting splitting a claim." ECF No. 25 at 24. In *Bechtel*, employees of the defendant (Bechtel) sued it in state court for claims arising out of Alaska law. While that lawsuit was pending, the Secretary of Labor filed an action against Bechtel in federal court asserting claims under the FLSA arising out of the same conduct at issue in the state court action; this federal lawsuit ultimately resulted in a consent decree. After the consent decree was entered in the federal action, Bechtel filed a new action in federal court seeking to enjoin the ongoing state court action on the ground that the consent decree barred it. The court in this new federal action concluded that the consent decree did not have res judicata effect on the state court action because the requisite privity between the parties in both actions did not exist. The court reasoned that privity was lacking between the employees in the state court action and the Secretary of Labor in the federal action because the Secretary of Labor's "abilities to act as a privity [for employees] must be narrowly construed" in light of the broad remedial purpose of the FLSA, and because the Secretary could not have litigated in the federal action the state law claims at issue in the state action because he did not have statutory authority to do so. *Bechtel*, 636 F. Supp. at 500-01. The court also held that the state court action was not barred by res judicata for the additional reason that both suits did not involve the same "cause of action" in light of the Secretary's lack of statutory authority to seek the remedies that the employees were able to seek in the state court action under Alaska law. The court reasoned that the Secretary's lack of statutory authority to assert claims under Alaska law in the federal action meant that the general prohibition against claim-splitting should not apply, because applying the prohibition in that circumstance would deprive the employees in the state court action of their right to assert claims under Alaska law.

*Bechtel* is inapposite. First, nothing in *Bechtel* supports the proposition that the same plaintiff-employee can split his FLSA and state-law claims across two actions in federal court. That scenario is precisely what the doctrine against claim-splitting is meant to prohibit. Second, unlike in *Bechtel*, the absence of privity is not an issue here because Rojas is a party in both

actions. Third, unlike in *Bechtel*, no justification exists here for not applying the prohibition against claim-splitting, because it is not the case that Rojas lacked the authority or ability to assert claims under California law in the *Mode* litigation; Rojas was a party to that litigation and could have sought to amend the complaint to add state-law claims. *See Hanna v. S-L Distribution Co., LLC*, No. 1:19-CV-2143, 2021 WL 51581, at *4 (M.D. Pa. Jan. 6, 2021) (dismissing state-law claims asserted in second federal action without prejudice based on the claim-splitting doctrine in relevant part because the plaintiff in the second federal action was an opt-in plaintiff in the *Mode* litigation and "could have sought amendment to include Plaintiff's state law claims when she opted-in to the collective action suit," and reasoning that "[w]e cannot properly and efficiently consider Plaintiff's Illinois claim while the *Mode* court looks to the same underlying facts to decide a substantially similar case"); *see also Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 193, 199 (S.D.N.Y. 2014) (in FLSA collective action, granting motion to amend complaint to add state-law wage-and-hour claims on the grounds that the "proposed new claims rely on essentially the same facts as were set out in the original complaint" and the "FLSA's broad remedial nature and its collective action provision suggest that the act contemplates this very situation, and given the choice between litigating each claim separately or in the aggregate, it favors the latter."). Plaintiffs do not explain why, in light of Rojas' party status in the *Mode* litigation, he could not have moved to add California claims to the complaint in that case. Plaintiffs also do not explain why Rojas has not moved to dismiss his FLSA claims in the *Mode* litigation under Federal Rule of Civil Procedure 41(a)(2), or otherwise sought to withdraw his consent to join that collective action, to the extent that he wishes to litigate his claims before this Court.[8]

Accordingly, the Court concludes that Rojas' claims in this action must be dismissed without prejudice in light of the claim-splitting doctrine.[9]

---

[8] Plaintiffs note that they asked Defendants in the *Mode* litigation to stipulate to the dismissal without prejudice of Rojas' FLSA claims in that action and Defendants refused. A stipulation of dismissal is not the only vehicle for dismissing claims, however.

[9] In light of this conclusion, the Court need not reach the question of whether the claims are subject to dismissal under the first-to-file doctrine.

### V.    MOTION TO COMPEL ARBITRATION

#### A.    Legal Standard

The Federal Arbitration Act ("FAA") applies to arbitration agreements in any contract affecting interstate commerce. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001); 9 U.S.C. § 2.  Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  This provision reflects "both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal citations omitted).

On a motion to compel arbitration, the Court's role under the FAA is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  If the Court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the [C]ourt shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  9 U.S.C. § 4.  Where the claims alleged in a complaint are subject to arbitration, and one of the parties moves to stay the action pending arbitration, the Court may do so.  *Id.* § 3.

#### B.    Discussion

Defendants move to compel arbitration of the claims asserted by Plaintiffs Hernandez and Almaznai, and to stay the remainder of the action pending arbitration, including the claims of the rest of the named plaintiffs who are not subject to the motion to compel arbitration.  ECF No. 16. Defendants contend that Hernandez and Almaznai were employees of two non-parties, Sadaaland Distributor LLC and Prisca O Hernandez LLC ("signatory distributors") and, as such, Hernandez and Almaznai are bound, under an agency theory, by the distributor agreement between the signatory distributors and Defendants, as well as the arbitration provisions that it contains.  *See* ECF No. 16-1, Ex. A & B.  The arbitration provisions in the distributor agreement provide, in relevant part, that all disputes between the signatories to the contract, or their agents or employees, including "all claims and disputes relating to any allegation of any employment, franchise or other

14

non-independent contractor relationship or misclassification," shall be resolved by arbitration pursuant to the rules of the American Arbitration Association ("AAA"). *See* ECF No. 16-1 at 29-30, 80-81. Defendants argue that the question of whether Hernandez and Almaznai are bound by the arbitration provisions even though they are not signatories to the distributor agreement is for the arbitrator to decide, because the distributor agreement incorporates the AAA's rules and contains a provision delegating issues of arbitrability to the arbitrator. Finally, Defendants argue (1) that all issues relating to the distributor agreement and its arbitration provisions are governed by Pennsylvania law in light of the choice-of-law provision in the distributor agreement selecting the law of Pennsylvania; and (2) that under Pennsylvania law, the distributor agreement and its arbitration provisions can be enforced against Hernandez and Almaznai under an agency theory in light of their "close nexus" to the signatory distributors.

Plaintiffs oppose the motion, arguing that: (1) Hernandez and Almaznai are not parties to the distributor agreement and, therefore, no provision in the distributor agreement, including its arbitration provisions, can be enforced against them; (2) Defendants have not shown that Hernandez and Almaznai were agents of the signatory distributors such that the arbitration provisions in the distributor agreement can enforced against them; and (3) the arbitration provisions at issue are unconscionable and unenforceable.[10]

### 1. Contract Formation

The Court first examines whether an agreement to arbitrate exists. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) ("[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that

---

[10] After Defendants filed their reply, Plaintiffs moved for leave to file supplemental material that they contend is relevant to the present motion to compel arbitration. ECF No. 29. Plaintiffs seek to file excerpts from Defendants' March 23, 2021, filing in an ongoing arbitration captioned *Bonilla v. S-L Distribution Company LLC*, Case No. 01-19-0002-3905, on the ground that the excerpts are relevant to Defendants' interpretation of the choice-of-law provision in the distributor agreement in this case. Defendants oppose the request on the grounds that the excerpts are irrelevant to the determination of the present motion to compel arbitration, are incomplete, and are taken out of context. Defendants attached the complete brief to their opposition to provide the Court with what they contend is the necessary context. Finding good cause, the Court GRANTS Plaintiffs' motion for leave to file supplemental material, but the Court will consider the complete brief filed by Defendants instead of the excerpts that Plaintiffs filed.

dispute.").

Defendants contend that the issue of whether an agreement exists is for the arbitrator, and not the court, to decide, because the distributor agreement incorporates the AAA's rules and also contains a clause delegating arbitrability issues to the arbitrator.

Plaintiffs counter that no contract exists between Defendants and Hernandez and Almaznai and, for that reason, none of the arbitration provisions in the distributor agreement can be enforced against them.

Where, as here, contract formation is in question, a court may not enforce any provision in the contract in question before determining whether an agreement was formed in the first instance. *See Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1142 (9th Cir. 1991) ("To require the plaintiffs to arbitrate where they deny that they entered into the contracts would be inconsistent with the 'first principle' of arbitration that 'a party cannot be required to submit [to arbitration] any dispute which he has not agreed so to submit.'") (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986)). Accordingly, the Court cannot enforce the provisions in the distributor agreement selecting the AAA's rules or any provisions delegating questions of arbitrability to the arbitrator, until it is satisfied that an agreement between the parties was formed. *See Eiess v. USAA Fed. Sav. Bank*, 404 F. Supp. 3d 1240, 1248 (N.D. Cal. 2019) (Chen, J.) ("The issue of contract formation, however, is not a delegable gateway issue. The fundamental threshold question of whether there exists a binding contract (of which an arbitration clause is a part) cannot be delegated because it cannot be assumed that a delegation clause contained therein must be given effect. In other words, if a contract contains a delegation clause, that delegation clause may be given effect only where the contract has been formed in the first instance.") (citations omitted); *see also Volt Info. Scis., Inc. v. Bd. of Trs. of the Leland Stanford Jr. Univ.*, 489 U.S. 468, 478 (1989) ("[T]he FAA does not require parties to arbitrate when they have not agreed to do so[.]").

"Because contract formation is not a delegable gateway issue, the Court must determine (1) whether a valid arbitration agreement exists and (2) if so, whether the arbitration agreement delegated the issue of arbitrability to the arbitrator." *Teleport Mobility, Inc. v. Sywula*, No. 21-

CV-00874-SI, 2021 WL 2291807, at *2 (N.D. Cal. June 4, 2021); *see also Kum Tat Ltd. v. Linden Ox Pasture, LLC*, 845 F.3d 979, 983 (9th Cir. 2017) ("The district court did not clearly err in reserving for itself the question whether the parties agreed to arbitrate."). The "liberal federal policy regarding the scope of arbitrable issues is inapposite" where the issue before the court is "whether a particular party is bound by the arbitration agreement." *Norcia v. Samsung Telecommunications Am., LLC*, 845 F.3d 1279, 1291 (9th Cir. 2017) (citation and internal quotation marks omitted).

Where, as here, the Court's subject matter jurisdiction is under 28 U.S.C. § 1331, federal common law governs the formation issue. *See Casa del Caffe Vergnano S.P.A. v. ItalFlavors*, LLC, 816 F.3d 1208, 1211 (9th Cir. 2016) (holding, in an action brought under 28 U.S.C. § 1331, that "the issue of whether the Commercial Contract constituted a binding agreement is governed by federal common law") (citation omitted); *cf. Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (holding, in an action brought under 28 U.S.C. § 1332, that state contract law governs the issue of contract formation). Federal common law "looks to general principles for interpreting contracts[,]" which are often "found in the Restatement (Second) of Contracts." *Id.* at 1211-12 (citations and internal quotation marks omitted).

"[T]he party seeking to compel arbitration . . . bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Norcia*, 845 F.3d at 1283 (citation and internal quotation marks omitted). "Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement." *Three Valleys*, 925 F.2d at 1141 (citation and internal quotation marks omitted). In deciding whether there is a genuine issue of fact concerning the formation of an agreement, the party opposing arbitration shall receive "the benefit of all reasonable doubts and inferences." *Id.* (citation and internal quotation marks omitted).

The Ninth Circuit has recognized that "nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles." *Letizia v. Prudential Bache Secs., Inc.*, 802 F.2d 1185, 1187 (9th Cir. 1986). "Among these principles are '1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel.'"

*Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (citation omitted). An agency relationship exists where there is "(1) a manifestation by the principal that the agent shall act for him; (2) that the agent has accepted the undertaking; and (3) that there is an understanding between the parties that the principal is to be in control of the undertaking." *Sun Microsystems Inc. v. Hynix Semiconductor Inc.*, 622 F. Supp. 2d 890, 899 (N.D. Cal. 2009) (describing the "traditional agency test" under the federal common law).

Defendants argue that Hernandez and Almaznai are bound by the arbitration provisions in the distributor agreement because they were employees and, therefore, agents, of the signatory distributors.[11] Defendants bear the burden of establishing the purported agency relationship. Defendants rely on the declaration of Kyle Jordan, who is "Vice President, Partner Brand Strategy & Route Infrastructure for the Campbell's Snacks business unit of Campbell Soup Company." ECF No. 16-1 ¶ 1. This declaration states that, "upon information and belief," Plaintiff Almaznai was employed by Sadaaland Distributor LLC, which is owned and operated by Morad Almaznai, *id.* ¶ 21; and that Plaintiff Hernandez was employed by Prisca Hernandez LLC, which is owned and operated by his wife, Prisca Hernandez, *id.* ¶ 22. Jordan's declaration, however, does not specify *how* he knows that Hernandez and Almanza were employed by the signatory distributors. A declaration on information and belief is not entitled to any weight when the declarant fails to establish a basis in personal knowledge. *Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1412 (9th Cir. 1995); *see also Jameson v. Jameson*, 176 F.2d 58, 60 (D.C. Cir. 1949) ("Belief, no matter how sincere, is not equivalent to knowledge.").

Defendants argue that Jordan's statements about the employment relationship in question

---

[11] Defendants, in passing, allude to other, non-agency theories for enforcing arbitration agreements against nonsignatories under California law. *See* ECF No. 16 at 14 n.6; ECF No. 28 at 9. Because Defendants relegate these non-agency theories to a footnote and to their reply, the Court declines to consider them. *See Cheever v. Huawei Device USA, Inc.*, No. 18-CV-06715-JST, 2019 WL 8883942, at *3 (N.D. Cal. Dec. 4, 2019) (Tigar, J.) ("'Arguments raised only in footnotes, or only on reply, are generally deemed waived' and need not be considered.") (quoting *Estate of Saunders v. Comm'r*, 745 F.3d 953, 962 n.8 (9th Cir. 2014)). The Court also generally declines to consider arguments made for the first time on reply. *Holley v. Gilead Scis., Inc.*, 379 F. Supp. 3d 809, 821 n.5 (N.D. Cal. 2019).

are admissible and well-supported because Jordan stated the following in his declaration:

> Based on my personal knowledge and experience, my familiarity with S-L Distribution Company, LLC's business and methods of operation, my experience engaging with independent DSD partners ("IDPs"), and my knowledge and review of relevant business records created and kept in the regular course of business, I have the personal knowledge required to execute this declaration, would testify competently to the same under oath if called as a witness, and can confirm the accuracy of the information set forth herein.

ECF No. 28 at 11 (quoting ECF No. 16-1 ¶ 3).

The Court finds that the Jordan declaration is insufficient to establish, or even to raise a genuine issue of fact as to, the existence of an agency relationship between Hernandez and Almaznai and the signatory distributors, because Defendants have not shown that Jordan has personal knowledge of the relationship, if any, between Hernandez and Almaznai and the signatory distributors. The declaration does not describe the basis of Jordan's own connection to Defendants or explain why he would have any familiarity with Defendants' business and operations. Jordan states that he works for Campbell Soup Company, but Campbell Soup Company is not party and Jordan does not identify its relationship to Defendants. Further, Jordan does not describe the business records he reviewed or what aspect of Defendants' business, methods, or operations led him to believe that Hernandez and Almaznai are employees of the signatory distributors. Accordingly, the Court gives the Jordan declaration minimal weight. *See Pahlavi*, 58 F.3d at 1412.

Other than the Jordan declaration, Defendants have submitted nothing else (other than the distributor agreements themselves, which do not mention Hernandez or Almaznai) from which the Court could infer that the signatory distributors exerted the requisite control over Hernandez and Almaznai, such as business records or declarations by persons who had personal knowledge of the relationship between them.[12] On this record, and because the Court must draw all inferences and

---

[12] Defendants note that Plaintiff Almaznai entered into a stipulation in another action not before this Court to proceed to arbitration with respect to "substantially the same claims" that he asserts in this action in lieu of opposing a motion to compel arbitration based on the distributor agreement. *See* ECF No. 16 at 12-13; ECF No. 28 at 7 n.1. Defendants contend that Almaznai refused to comply with the stipulation after the AAA misplaced Defendants' payment of the arbitration fees and temporarily closed the case. Defendants fail to explain how this stipulation,

doubts in favor of Hernandez and Almaznai, the Court cannot conclude that a genuine dispute exists with respect to whether Hernandez and Almanzai were agents of the signatory distributors. Defendants have presented, at best, a scintilla of evidence as to the existence of an agency relationship between Hernandez and Almaznai and the signatory distributors, which is insufficient to create a genuine dispute. *See Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004) ("When considering a motion to compel arbitration, a court applies a standard similar to the summary judgment standard of Fed.R.Civ.P. 56.") (citation omitted); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000) ("A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact."). In light of the absence of a genuine dispute of fact as to the purported agency relationship upon which Defendants' motion to compel arbitration depends, the Court denies the motion as a matter of law.

The authorities upon which Defendants rely do not compel a different conclusion.[13] For example, Defendants rely heavily on *Provenzano v. Ohio Valley Gen. Hosp.*, 121 A.3d 1085, 1097 (Pa. Super. Ct. 2015) for the proposition that, under Pennsylvania law, which does not govern here,[14] an arbitration agreement can be enforced *against a nonsignatory* agent if there is a "close nexus" between him and a signatory principal. ECF No. 28 at 9. But that is not what *Provenzano* holds. Instead, the court there held that *a nonsignatory* "*can enforce*" an arbitration agreement *against a signatory* if an "obvious and close nexus" exists between the nonsignatory agent and a signatory principal. *See Provenzano*, 121 A.3d at 1097, 1103. Other cases that Defendants cite support the same proposition. *See Dodds v. Pulte Home Corp.*, 909 A.2d 348, 352 (Pa. Super. Ct.

which is not before this Court, is relevant to the agency analysis.

[13] Defendants' reliance on *Smay v. E.R. Stuebner, Inc.*, 864 A.2d 1266, 1270 (2004) is unavailing. That case is inapposite because it addresses a non-agency contract theory (i.e., a third-party beneficiary theory). *See id.* (holding that "a third-party-beneficiary of the contract" was bound by the arbitration agreement contained in the contract).

[14] Defendants argue that Pennsylvania law governs in light of the choice-of-law provisions in the distributor agreement. For the reasons discussed above, the Court cannot enforce any provisions in the agreement without first finding that an agreement between Defendants and Hernandez and Almaznai was formed.

United States District Court
Northern District of California

2006) ("[B]ecause PHC wishes to enforce the arbitration agreement rather than avoid it, Plaintiffs, as signatories to the arbitration agreement, should not be able to avoid the requirement to arbitrate by a non-signatory when the non-signatory wants to arbitrate."); *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1122 (3d Cir. 1993) (same).

Defendants argue that the Court should simply assume that "the court's holding [in *Provenzano*] applies to the inverse situation, like the facts present here," ECF No. 28 at 9. The Court is not persuaded. Allowing a nonsignatory to enforce an agreement against a signatory does not raise consent issues, because the signatory against whom the agreement is being enforced assented to the terms of the agreement. *See Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185, 1188 (9th Cir. 1986) (holding that a nonsignatory agent of a signatory can enforce an arbitration agreement against a signatory). The same is not true where the person against whom the agreement is being enforced did not sign or consent to it. *See, e.g.*, *Legacy Wireless Servs., Inc. v. Hum. Cap., L.L.C.*, 314 F. Supp. 2d 1045, 1055 (D. Or. 2004) (declining to enforce an arbitration agreement against a nonsignatory under an agency theory and noting that "[b]asic fairness principles more readily favor holding a signatory to a contract to which it specifically agreed"); *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 446 (3d Cir. 1999) (same and noting that "traditional principles of contract and agency law do not support the conclusion that the parties resisting arbitration are bound by an arbitration agreement they did not sign").

Defendants also argue that the arbitration provisions can be enforced against Hernandez and Almaznai because their claims against Defendants "are grounded in" the distributor agreement, as the FAC contains allegations describing a "distributor agreement" in the context of the work that Plaintiffs allegedly performed for Defendants. ECF No. 28 at 8-9. This argument is unavailing because it has no relevance to the agency analysis. *See Comer*, 436 F.3d at 1103 (rejecting argument that an arbitration agreement can be enforced against a nonsignatory because

the nonsignatory's claim "arises out of the underlying contract" on the ground that this argument "is not grounded in ordinary contract and agency principles").

Accordingly, the Court denies Defendants' motion to compel arbitration with respect to Hernandez and Almaznai.[15]

### 2. Request for a Stay of the Action Pending Arbitration

Because the Court has found that Defendants have not met their burden to show that the parties formed an agreement to arbitrate, and because the Court denies Defendants' motion to compel arbitration based on this finding, the Court denies as moot Defendants' request to stay the action pending arbitration.

### CONCLUSION

For the foregoing reasons, the Court:

1. DENIES Defendants' motion to dismiss the claims of Plaintiff Cruz;

2. GRANTS Defendants' motion to dismiss the claims of Plaintiff Rojas; such claims are DISMISSED WITHOUT PREJUDICE;

3. DENIES Defendants' motion to compel arbitration with respect to Plaintiffs Hernandez and Almaznai;

4. DENIES Defendants' motion to stay the action pending arbitration AS MOOT; and

5. GRANTS Plaintiffs' motion for leave to file supplemental material, ECF No. 29, with the caveat discussed above.

**IT IS SO ORDERED.**

Dated: June 21, 2021

_____
JON S. TIGAR
United States District Judge

---

[15] Because the Court finds that Defendants have not met their burden to show that an arbitration contract was formed, the Court need not reach the parties' other arguments.